UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE SEASONS HOMEOWNERS ASSOCIATION INC., a Nevada nonprofit corporation; and DOE HOMEOWNERS 1 through 1000,<br><br>Plaintiffs,<br><br>v.<br><br>RICHMOND AMERICAN HOMES OF NEVADA, INC., a foreign corporation doing business in Nevada; RED ROCK MECHANICAL, LLC, a Nevada company; ASPEN MANUFACTURING HOLDINGS, INC., a foreign corporation doing business in Nevada; DOE INDIVIDUALS 1-200; and ROE BUSINESSES or GOVERNMENTAL ENTITIES 1-200,<br><br>Defendants.<br><br>RICHARD STANTON, individually, and on behalf of those similarly situated; ZAYDA BUSTOS, individually and on behalf of those similarly situated; ANTHONY and DEVRON TURNER individually and on behalf of those similarly situated; DOE HOMEOWNERS 1-1,000,<br><br>Plaintiffs,<br><br>v.<br><br>RICHMOND AMERICAN HOMES OF NEVADA, INC., a foreign corporation doing business in Nevada; SUNRISE MECHANICAL, INC., a Nevada corporation; ASPEN MANUFACTURING HOLDINGS, INC. f/k/a/ ASPEN MANUFACTURING, INC. a foreign corporation doing business in Nevada; doe individuals 1-200; AND roe business OR governmental entities 1-200,<br><br>Defendants. | Case No. 2-14-cv-00428-APG-CWH<br><br>**Order granting in part and denying in part Plaintiffs' Motion for Remand**<br><br>(Dkt. ##6, 7, 13.) |

1

In these consolidated construction defect cases, Plaintiffs Seasons Homeowners' Association ("SHA") and Richard Stanton, *et al.*, move for remand following Defendants Richmond American's ("Richmond") and Aspen Manufacturing's ("Aspen") removal to this Court. At issue are two cases, started and later consolidated in state court: *Seasons HOA v. Richmond American Homes of Nevada* (filed February 11, 2013, *see* Dkt. #6-1 at 2-3), and *Stanton v. Richmond American Homes of Nevada* (filed on October 7, 2013, *see* Dkt. #6-5 at 2-4). Both cases were filed as class actions: *Stanton* under Rule 23, and *Seasons* under NRS 116.3102(1)(d) as applied under *Beazer Homes Holding Corp. v. Eighth Judicial Dist. Court ex rel Cnty. of Clark*, 215 P.3d 697 (Nev. 2009). The state court entered a minute order consolidating the cases on February 7, 2014 (*see* Dkt. #6-1 at 3), and on March 14, 2014 filed a consolidation order that included findings of fact and conclusions of law. (Dkt. #1-4 at 2.) Primarily at issue regarding remand is whether either the minute order or the consolidation order operated to merge the two actions into one for trial.

On March 21, 2014, Defendants filed their Petition for Removal to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(d)(2)(A). That statute provides that the district courts shall have original jurisdiction over class actions[1] in which any member of a plaintiff class is a citizen of a different state from any defendant and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs. On April 4, 2012, Plaintiffs filed a Motion to Remand to State Court.[2] (Dkt.#6.) That same day, Richmond moved to certify an interlocutory

---

[1] 28 U.S.C. § 1332(d)(1)(B) defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action."

[2] Defendant Sunrise Mechanical and Red Rock Mechanical have joined Richmond's response to the Motion for Remand. (*See* Dkt. ##19, 25.)

appeal to the Nevada Supreme Court and to stay this case pending resolution of that certification. (Dkt. ##7, 13.) Because I am remanding this case to state court, Richmond's motions are denied as moot.

## DISCUSSION

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* "Procedural defects in the removal of an action may be waived by the failure to make a timely objection before the case proceeds to the merits. However, defects going to the subject matter jurisdiction of the court cannot be waived and may be raised at any time." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) (citations omitted). Remand is proper if the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *See also Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1240 (9th Cir.2006) ("remand may be ordered either for lack of subject matter jurisdiction or for "any defect" in the removal procedure").

Where, as in this case, the complaint alleges only an amount in controversy in excess of $10,000, the removing party bears the burden of establishing that the jurisdictional amount is satisfied at the time of removal based on competent facts outside the face of the pleadings. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) ("If it is unclear what amount of damages the plaintiff has sought, as is true here with regard to Gaus's claim, . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."). Broad allegations that the jurisdictional amount is met, "'although attempting to recite some 'magical incantation,' neither overcome[ ] the 'strong presumption' against removal jurisdiction, nor

satisf[y][the defendant]'s burden of setting forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds" $5,000,000. 443 F.3d at 689 (quoting *Gaus*, 980 F.2d at 567); *see also Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997) ("[R]emoval cannot be based simply upon conclusory allegations where the ad damnum is silent.") (internal quotations and citation omitted). "[T]he court may insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *Gaus*, 980 F.2d at 567.

Here, Aspen's Petition for Removal alleges only that "the matters in controversy allegedly exceed $5,000,000 based on Plaintiffs' alleged damages, exclusive of interests and costs. . . ." (Dkt. #1 at 2:21-23.) Aspen's Statement Regarding Removal asserts that the amount in controversy exceeds the $5,000,000 jurisdictional amount threshold because "[g]iven the number of residences at issue in the instant action (692), and the anticipated Plaintiff cost of repair, the preponderance of the evidence shows that the amount in controversy far exceeds [$5,000,000]." (Dkt. #9 at 3:22-26.) Further, Aspen states that while "[n]either of the cases alone were perceived sufficient to meet the amount in controversy requirements, . . . once consolidated on March 14, 2014, the amount in controversy requirement was met." (*Id.* at 4:12-14.) Finally, in their respective Oppositions to the Motion to Remand, both Defendants allege that the cost of repair per Richmond home is $7,183.91 (Richmond American's Response, Dkt. #16 at 9), and the cost per Aspen home is $8,045.97 (Aspen's Response, Dkt. #17 at 7). Aspen also contends that $6,676,247 in attorney's fees was awarded in a recent similar case. (Dkt. #17 at 7.) Moreover, Richmond estimates, without providing any evidentiary support, that Plaintiffs' claimed expert fees will be in excess of $1,000 per home. (Dkt. #16 at 10.)

> **(1) The Court lacks subject matter jurisdiction because Defendants cannot demonstrate they have met the Class Action Fairness Act's ("CAFA") aggregated jurisdictional amount threshold of $5 million under 28 U.S.C. § 1332(d)(2).** (*Id.* at 7-8.)

Two provisions under 28 U.S.C. § 1332(d) guide analysis of individual claims aggregation for the purposes of determining whether the $5,000,000 jurisdictional amount requirement is met: §§ 1332(d)(6) and (d)(11). Subsection (d)(6) provides that in any class action, the claims of the individual members within that class shall be aggregated to determine whether the amount in controversy exceeds the $5,000,000 jurisdictional requirement. Subsection (d)(11) addresses "mass actions," allowing for aggregation of the amount in controversy for 100 or more persons proposed to be tried jointly. Because Defendants have not sought removal under the "mass action" provisions, however, I must first determine whether aggregation under subsection (d)(6) may be calculated by aggregating the claims in both actions because the state court merged the two actions into one. As discussed below, the state court did not merge the two class actions into one, so neither action standing alone meets the jurisdictional amount requirement.

> **(a) Whether the state court consolidation merged the respective Plaintiffs' claims such that the respective amounts in controversy may be aggregated to meet the $5 million jurisdictional requirement.**

Plaintiffs assert that Defendants cannot aggregate the amounts in controversy in the consolidated cases. Essentially, they argue that 28 U.S.C. § 1332(d)(2) allows for the aggregation of individual claims within a single class or the same ostensible class, but does not provide for the aggregation of separate claims that, while related, do not feature overlapping populations. (Dkt. #6 at 8.) Defendant Richmond counters that "'[t]he term "consolidation" is used in different senses. One use is where several actions are combined into one, lose their separate identities and become a single action; another is where several actions are tried together but each retains its separate character.'" (Dkt. #16 at 7 (citing *Randall v. Salvation Army*, 100 Nev. 466, 470, 686

P.2d 241, 243 (1984)).) Defendant Aspen points out that in Plaintiffs' state court motion to consolidate, they specifically stated that "the Stanton case should be consolidated into this case for all purposes, including the disposition of motions, discovery and *trial*." (Dkt. #17 at 6 (citing Dkt. #17-3 at 7) (emphasis in original).)

As an initial matter, only the provisions under 28 U.S.C. § 1332(d)(11) that speak to "mass actions" allow for aggregation of the amount in controversy relating to 100 or more persons proposed to be tried jointly. Defendants did not seek removal under the mass action provisions, and there is no similar provision allowing for aggregation of amounts in controversy found elsewhere under subsection 1332(d). 28 U.S.C. § 1332(d)(2)(6) does provide that in any class action the claims of the individual members within that class shall be aggregated, but this is unlike the situation here where the two cases feature distinctive classes related only by the nature of the alleged harm. It also bears noting Plaintiffs assert that while the consolidation order was granted to promote judicial economy and to serve the interests of efficiency and justice, "it was not clearly joined" for trial. (Dkt. #6 at 20); *see also* Consolidation Minute Order (Dkt. #6-1 at 3); and electronically Filed Order Granting Consolidation (Dkt. #1-4 at 2).

Under Nevada law,

> The term "consolidation" is used in different senses. One use is where several actions are combined into one, lose their separate identities and become a single action; another is where several actions are tried together but each retains its separate character. *Herstein v. Kemker*, 19 Tenn.App. 681, 94 S.W.2d 76 (1936). *An order consolidating actions does not necessarily work a merger of the issues and render the litigants parties to each other's suits. See Mikulich v. Carner*, 68 Nev. 161, 228 P.2d 257 (1951); *Wineglass Ranches, Inc. v. Campbell*, 12 Ariz.App. 571, 473 P.2d 496 (1970).

*Randall v. Salvation Army*, 100 Nev. 466, 470, 686 P.2d 241, 243-44 (1984) (emphasis added). Even where there is an identity of the issues of law and fact in consolidated cases resulting in a

verdict of damages for plaintiffs against the same defendants, "the extent of damage, the extent of recovery, cannot be other than an issue in each action entirely independent of the other." *Mikulich*, 228 P.2d at 260-61.

In *Mikulich*, two actions arose from a single traffic accident; the court granted the defendants' motion to consolidate, ordering a joint trial of the causes of action asserted in the two cases. *Id.* at 260. The cases were tried together, the court instructed a single jury in both cases, and the jury rendered separate verdicts: $65,000 in favor of Purdy and $10,000 in favor of Carner. *Id.* The defendants paid Purdy $10,000 and appealed the Carner judgment. *Id.* Carner moved to dismiss the appeal arguing that, in light of the consolidation, when the defendants satisfied the Purdy judgment they expressly acknowledged liability to Carner as a result. *Id.* The court disagreed, noting that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." *Id.* Accordingly, the court held that "the order that the two causes of action be tried jointly and that they be tried together on the date set for trial did not merge the two suits into a single cause, or change the rights of the parties or make Carner a party to the Purdy suit, or Purdy a party to the Carner suit." *Id.*

Here, the state court's order consolidating the cases provided no clear indication that it effectively merged the two cases into a single action. Indeed, the written order required that "all documents in *either* matter shall now be filed in the [*Seasons* action]; that each document will include on the certificate of service the following additional information: "This document applies to [the *Stanton* action]" and will list all applicable case numbers and parties. . . ." (Dkt. #1-4 at 4.) By its very language, the written order provides that the cases would still receive separate

noticing treatment. Thus, the order does not work a merger of the issues and render the litigants parties to each other's suits. It does not matter whether Plaintiffs originally moved the state court to merge the actions through consolidation. The issue is whether the consolidation order merged the two actions, and based on the language of the written order, Defendants have failed to establish that the consolidated actions were merged into a single action. Thus, in order to overcome the strong presumption against removal jurisdiction, Defendants must establish that the court may aggregate the separate amounts in controversy in order to meet the $5 million jurisdictional requirement.

Richmond argues that the Sixth Circuit has allowed the aggregation of claims in five separate class actions, each valued at $4.9 million, in order to reach the jurisdiction threshold.[3] (Dkt. #16 at 8 (citing *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 407 (6th Cir. 2008).) However, that case is distinguishable. In *Freeman*, the plaintiffs originally filed a single class action, but later divided it into five separate suits covering distinct six-month time periods, against identical parties, featuring identical claims, and each suit was limited to total class damages of less than $4.9 million. *Id.* at 406. The court concluded that the amounts in controversy should be merged because "no colorable basis for dividing the claims" had been identified by the plaintiffs other than to avoid the clear purpose of CAFA. *Id.*

*Freeman's* "no colorable basis" standard should be construed narrowly. As one district court in this circuit has noted:

> Courts in this circuit and elsewhere have repeatedly emphasized that *Freeman* applies only where there is "no colorable basis for dividing the claims" other than to avoid federal jurisdiction. *See Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 955 (9th Cir.2009) (holding that Freeman was not applicable where "each of the seven

---

[3] In its Response, Aspen is silent on this issue.

state court actions was brought on behalf of a different set of plaintiffs, meaning that none of the plaintiff groups stands to recover in excess of CAFA's $5 million threshold between the seven suits" and thus that "none of the seven groups of plaintiffs has divided its claims into separate lawsuits to expand recovery"); *Royalty Alliance, Inc. v. Tarsadia Hotel*, Nos. 09CV2739 DMS (CAB), 10-CV-1231 DMS (CAB), 2010 WL 3339202, *3 (S.D.Cal. Aug.23, 2010) ("In this case, Royalty Alliance has a different class of Plaintiffs than Salameh. In *Salameh*, the proposed class members are individuals who purchased a condominium unit in HRHSD. In *Royalty Alliance*, the proposed class members comprise individuals who attempted to purchase a condominium unit at HRHSD but, after putting down a deposit, were unable to complete the purchase. *Royalty Alliance* also contains three state law claims not present in *Salameh*. Thus, while similarities exist between the claims, there is a colorable basis for dividing up the lawsuits as Plaintiffs have done. Accordingly, combining the two matters for purposes of determining CAFA jurisdiction is unwarranted" (emphasis added)); *Villareal v. Dole Food Co., Inc.*, No. CV 09-189-CAS (VBKx), 2009 WL 690146, *4 (C.D.Cal. Mar.9, 2009) (distinguishing *Freeman* where "each of the cases at issue here involves distinct plaintiffs," and observing that "the Sixth Circuit explicitly noted that its 'holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA'" (emphasis added)); *see also Marple v. T-Mobile Cent.*, LLC, Nos. 10-CV-00954-NKL, 10-CV-00955, 10-CV-00956, 10-CV-00957, 10-CV-00958, 10-CV-00959, 10-CV-00960, 10-CV-00961, 10-CV-00962, 10-CV-00963, 2011 WL 300162, *3 (W.D.Mo. Jan.27, 2011) ("Here, in contrast, Plaintiffs have at least a colorable basis for filing ten separate class actions against T-Mobile. Each class action corresponds to a separate state court action that T-Mobile itself has filed. Because this case is clearly distinguishable from *Freeman*, the Court will not expand upon a Sixth Circuit exception to the plain meaning of the CAFA text" (emphasis added)).

*Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC*, 2011 WL 1743285 (C.D. Cal. May 4, 2011).

Here, the cases feature distinct classes and, although both were filed in 2013, they were not consolidated until 2014. *Seasons* arose when the Seasons Home Owners Association served an NRS Chapter 40 pre-litigation claim on the defendants alleging product defects that were causing damage to 380 single family homes. The complaint in that case was filed on February

11, 2013. (Dkt. #1-2 at 2.) *Stanton* arose when individual homeowners in a 316 home community brought claims based on the same product defects. The complaint in that case was filed on October 7, 2013. (Dkt. #1-3 at 2.) Both cases feature distinct procedural histories and, as discussed above, there is no clear indication that that the state court merged the cases when it consolidated them. At the very least, Plaintiffs had a colorable basis for filing separate class actions, and, unlike *Freeman*, Plaintiffs did not divide their claims into separate lawsuits to expand recovery. Instead, only after separate Plaintiffs filed separate actions and developed distinct procedural histories, did Plaintiffs move for consolidation on the basis of judicial economy. Therefore, I must weigh whether either action, standing alone, provides an amount in controversy sufficient to meet the jurisdictional requirement.

### (b) Neither action meets the $5 million jurisdictional amount requirement.

As discussed above, Defendants bear the burden of proving they have met the jurisdictional requirement. Defendants admit that "[n]either of the cases alone [is] sufficient to meet the amount in controversy requirements. . . ." (Dkt. #9 at 4.) In their respective Responses to the Motion to Remand, Defendants calculate that the cost of repair per home is $7,183.91 (Richmond American's Response, Dkt. #16 at 9) or $8,045.97 per home[4] (Aspen's Response, Dkt. #17 at 7). Using Aspen's higher cost per calculation of $8,045.97 and multiplying it by the 380 homes at issue in the *Seasons*[5] action, the total amount in controversy is $3,057,471.26; the same calculation for the 316 units at issue in *Stanton* yields only $2,542,526.52. Aspen contends

---

[4] Aspen actually frames the amount in the aggregate by estimating cost of repair for all 696 homes would be over $5.6 million. I have divided the aggregate amount by 696 to get to the $8,045.97 per home figure.

[5] Rather than engage in the Sisyphean task of analyzing the calculations for both actions, the Court need only determine whether the 380 units at issue in *Seasons* is sufficient to meet the jurisdictional amount requirement. If the *Seasons* action cannot meet the jurisdictional amount requirement, then certainly the *Stanton* action (with only 316 units at issue) likewise cannot meet the requirement.

that an attorney's fees award in a recent similar case was $6,676,247. (Dkt. #17 at 7.) That case involved the same product defects affecting 346 homes; the same attorneys in this case represented parties in that case. However, Aspen provides no citation to that case. Richmond American asserts only that the Court should consider that Plaintiffs' counsel bill at an hourly rate of $600. (Dkt. #16 at 10.) However, Richmond provides no additional basis for calculating the possible amount of hours Plaintiffs' counsel will work. Because the attorney's fees calculations are far too speculative to meet the preponderance of evidence standard, I disregard them. Moreover, Richmond estimates (without providing any evidentiary support) that Plaintiffs' claimed expert fees will exceed $1,000 per home. Assuming that is correct, that would add only $380,000 to the *Seasons* amount in controversy bringing the total amount to $3,437,471.26. As a result, Defendants have failed to justify their jurisdictional allegations by a preponderance of the evidence. Because this Court lacks subject matter jurisdiction, I must remand the case to the state court.

### (2) Plaintiff's request for attorney's fees is denied.

Finally, Plaintiffs argue that they are entitled to attorney's fees under 28 USC § 1447(c), which provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (Dkt. #6 at 4.)

The Supreme Court established the standard for awarding attorneys' fees under § 1447(c) in *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In *Martin*, the unanimous Court rejected the notion of an automatic fee award or even the existence of a strong presumption in favor of awarding fees, ruling instead "that an award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales." *Id.* at 139. The Court held that "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may award attorney fees under §

1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id* at 140.

In *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 166-67 (9th Cir. 2008), the Ninth Circuit applied the Seventh Circuit's test[6] for finding removal "objectively reasonable" where the basis for removal was not "clearly foreclosed" by the relevant case law. *See also Patel v. Del Taco, Inc.*, 446 F.3d 996, 999-1000 (9th Cir. 2006) (affirming award of attorney's fees where no objectively reasonable basis for removal); *Gardner v. VICI*, 508 F.3d 559, 561-62 (9th Cir. 2007) (reversing award of attorney's fees as abuse of discretion). In this case, Defendants had a reasonable basis for removal. There is no evidence that the Defendants sought to prolong the litigation or impose additional costs on Plaintiffs. Defendants sought removal on a reasonable legal basis even though I conclude that removal is not warranted under the facts in this case. Accordingly, Plaintiffs are not entitled to attorney's fees under 28 U.S.C. § 1447(c).

Given this remand, I decline to reach the other issues raised in the briefs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (Dkt. #6) is **GRANTED IN PART and DENIED IN PART.** The case is hereby remanded to the state court, and Plaintiffs' request for an award of attorney's fees is denied.

Richmond's motions to certify an interlocutory appeal to the Nevada Supreme Court and to stay this case pending resolution of that certification (Dkt. ##7, 13) are **DENIED AS MOOT.**

DATED this 18th day of June, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[6] *See Lott v. Pfizer, Inc.*, 492, F.3d 789, 793 (7th Cir. 2007).